849 So.2d 547 (2003)
Channon Guidroz MAJOR
v.
Jason Scott MAJOR.
No. 2002 CU 2131.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*548 Maureen E. Coughlin, Baton Rouge, for Plaintiff-Appellant Channon Guidroz Major.
Haley D. Major, Port Allen, for Defendant-Appellee Jason Scott Major.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
This is an action by a father in opposition to the planned relocation of his eleven-year-old daughter. The mother now appeals from an order of the trial court precluding the daughter from relocating with her mother outside an area of family support.

FACTS
The parties in this matter, Channon Guidroz Major (Ms. Major) and Jason Scott Major (Mr. Major), were married to each other on November 24, 1989, in Pointe Coupee Parish, Louisiana. Of this marriage, one child, Karlie Lynn Major, was born, on April 22, 1991. The parties were subsequently divorced on August 26, 1994, and the parties were awarded joint custody with Ms. Major being designated as the primary domiciliary parent of the child, subject to alternating weekend and holiday visitation in favor of Mr. Major.
Based upon the pleadings contained within the record, Ms. Major had been employed since December 1991 as a secretary for Ames Pest Control. Following the rendition of her divorce decree, Ms. Major became romantically involved with the owner of Ames Pest Control. After approximately five years, Ms. Major and the owner broke off their engagement, and the owner decided that it would be an uncomfortable situation for Ms. Major to continue working at Ames Pest Control. Ms. Major testified that before she left Ames Pest Control she had been making fifteen hundred dollars per month, but received no insurance benefits. At that point, Ms. Major and Karlie moved in with Ms. Major's parents.
*549 Ms. Major then began dating a man who lived near Nederland, Texas. Through trips to visit her boyfriend, Ms. Major testified that she made many friends in the area. A girlfriend mentioned that the doctor's office she worked for was looking to hire a medical billing operator, and Ms. Major was subsequently offered the job. Ms. Major also testified that when she mentioned to Mr. Major that she had been offered a job in Texas and inquired as to his feelings regarding a move, "the next thing [she knew she] was served [with] papers."

ACTION OF THE TRIAL COURT
On October 9, 2001, Mr. Major filed a "Notice of Objection to Relocation and Request for a Temporary Order to Prevent Relocation" opposing his daughter's proposed relocation to Texas, and urged application of the relocation statutes. In the alternative, Mr. Major sought a modification of custody whereby he would be designated as the primary domiciliary parent. A temporary restraining order was signed prohibiting the move, and this matter was initially assigned for hearing on November 15, 2001.
Ms. Major responded by filing an Answer and Reconventional Demand wherein she denied that she had definite plans to move to Texas. Through a reconventional demand, Ms. Major sought dissolution of the temporary restraining order along with permission from the court to move with her daughter either 185 miles away to Nederville, Texas, or 130 miles away to Lake Charles, Louisiana. Ms. Major further sought a redetermination of child support based upon a change in circumstances.
In a hearing held on November 15, 2001, the parties reached several stipulations that were made a part of the judgment. Ms. Major was permitted by the court to move with her child to Lafayette, Louisiana, provided she obtained a job, housing, and supplied information regarding the child's proposed school to the court. Additionally, Mr. Major's child support obligation was increased from $200.00 per month plus one-half of private school expenses to $423.00 per month. These stipulations were also incorporated into and made a part of the stipulated judgment signed by the court on January 31, 2002.
A status conference was held in chambers on March 14, 2002. Through her counsel, Ms. Major averred that she had been unsuccessful in securing a job in Lafayette, Louisiana, and sought to relocate instead to Lake Charles, Louisiana. Mr. Major again opposed this move, and urged application of the relocation statutes, or in the alternative, modification of the existing child support plan and designation of himself as the primary domiciliary parent.
Another hearing was held in this matter on April 11, 2002. Both parties stipulated that Lake Charles, Louisiana, was within a 150-mile radius of New Roads, Louisiana. After hearing the evidence presented, and speaking briefly with the minor child, the trial judge ruled that Ms. Major could not relocate with her minor child outside of an undefined "area of family support." The trial judge further stated that if Ms. Major attempted to relocate outside of this area, the trial judge would designate Mr. Major as the primary domiciliary parent of the child. It is from this ruling that Ms. Major now appeals.

ASSIGNMENT OF ERRORS
In connection with her appeal in this matter, Ms. Major asserts that the trial judge erred in the following respects:
1. Requiring [Ms. Major] to meet the burden of proving that it would be in the best interest of the child to relocate to Lake Charles;

*550 2. In failing to consider the best interest factors under La. C.C. Art. 134;
3. In ruling in [Mr. Major's] favor, indicating that Mr. Major met his burden of proof that the proposed move to Lake Charles was a material change of circumstances which would negatively impact the welfare of the child and that transferring domiciliary parent status to him would be in the child's best interest;
4. In failing to consider the stated preference of the child to remain with her mother and move to Lake Charles; and
5. Conditioning the continuing designation of Ms. Major as the domiciliary parent on her remaining near the city of New Roads.

STANDARD OF REVIEW
It is a well recognized tenet of Louisiana jurisprudence that an award of child custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 383 So.2d 1231, 1236 (La.1979)(on rehearing). Every child custody case must be viewed within its own peculiar set of facts. Connelly v. Connelly, 94-0527, p. 4 (La.App. 1 Cir. 10/7/94), 644 So.2d 789, 793. The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101, 101 (La. 1988)(per curiam); Bercegeay v. Bercegeay, 96-0516, p. 5 (La.App. 1 Cir. 2/14/97), 689 So.2d 674, 676.
In the instant case, as in most custody cases, the trial court's determination was based heavily on factual findings. As an appellate court, we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. Id.

DISCUSSION
In her initial assignment of error, Ms. Major asserts that the trial court erred in requiring her to establish and prove that it would be in the best interest of her daughter to relocate to Lake Charles.
Louisiana Revised Statute 9:355.1 provides in pertinent part:
§ 355.1. Definitions
As used in this Subpart:
....
(4) "Relocation" means:
(a) Intent to establish legal residence with the child at any location outside of the state.
(b) If there is no court order awarding custody, an intent to establish legal residence with the child at any location within the state that is at a distance of more than one hundred fifty miles from *551 the other parent. If there is a court order awarding custody, then an intent to establish legal residence with the child at a distance of more than one hundred fifty miles from the domicile of the primary custodian at the time the custody decree was rendered.
(c) A change in the principal residence of a child for a period of sixty days or more, but does not include a temporary absence from the principal residence.
Additionally, Louisiana Revised Statute 9:355.13 provides:
§ 355.13. Burden of proof
The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child.
The parties hereto have stipulated that Lake Charles, Louisiana, is situated within one hundred fifty miles of New Roads, Louisiana. In the opinion of this court, the relocation statutes (La. R.S. 9:355.1 et seq.) do not apply unless Ms. Major proposes to establish legal residence with her daughter at a distance of greater than one hundred fifty miles from New Roads, Louisiana, her domicile at the time the custody decree was rendered.
It was legal error for the trial court to require Ms. Major to establish and prove that a proposed move within one hundred fifty miles from New Roads, Louisiana, was made in good faith and was in the best interest of the child. When a court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d at 844 n. 2.
Ms. Major and Mr. Major were granted a divorce pursuant to a judgment rendered August 26, 1994. The divorce judgment awarded custody of the minor child, Karlie Lynn Major, jointly to Ms. Major and Mr. Major with Ms. Major being designated as the primary domiciliary parent. Said judgment also awarded Mr. Major visitation every other weekend with the parties alternating visitation on major holidays.
Pursuant to a subsequent stipulated judgment rendered November 15, 2001, read and signed January 31, 2002, Ms. Major was permitted to move to Lafayette, Louisiana, under certain conditions. The parties agreed to maintain joint custody with Ms. Major continuing to serve as the primary domiciliary parent. Said judgment also provided for an increase in child support and maintained Mr. Major's visitation rights on alternating weekends and major holidays.
Louisiana Civil Code article 131 provides that in a proceeding for divorce or thereafter, the court shall award custody in accordance with the best interest of the child. However, once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears a heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1196 (La.1986). Hensgens v. Hensgens, 94-1200, p. 5 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52; writ denied, 95-1488 (La.9/22/95), 660 So.2d 478. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. *552 Barnes v. Cason, 25,808, p.6 (La.App. 2 Cir. 5/4/94), 637 So.2d 607, 611, writ denied, 94-1325 (La.9/2/94), 643 So.2d 149. An uncontested decree in which no evidence is presented as to the fitness of the parents is not a considered decree. Peyton v. Peyton, 614 So.2d 185, 186 (La.App. 3 Cir.1993).
In cases such as the instant matter, where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable. Hensgens, 94-1200 at 6, 653 So.2d at 52. Pre-1977 jurisprudence held that a plaintiff seeking a significant modification of a child custody decree was required to show that "a change in circumstances materially affecting the welfare of the child" had occurred since the prior decree. Mosely v. Mosely, 499 So.2d 106, 108 (La.App. 1 Cir.1986), writ denied, 505 So.2d 1138 (La.1987). The supreme court's opinion in Bergeron indicated that the changed circumstances rule was distinct from the heavy burden of proof required for a modification of custody, and further, that said rule had survived intact the 1977 amendment to La. Civ. Code art. 157. Mosely, 499 So.2d at 108. Thus, parties seeking a modification of a consent decree must nonetheless prove that there has been a material change of circumstances since the original custody decree was entered and that the proposed modification is in the best interest of the child. Hensgens, 94-1200 at 6, 653 So.2d at 52.
In the instant case, the underlying custody decree is a stipulated judgment whereby the parties have consented to a joint custody arrangement with Ms. Major as the primary domiciliary parent. The record contains no evidence regarding parental fitness, thus the heavy burden of proof rule enunciated in Bergeron is inapplicable. In order to modify the present custody arrangement, it was Mr. Major's burden of proof to establish that a change in circumstances materially affecting the welfare of the child had occurred since the rendition of the stipulated judgment on November 15, 2001, and further that the modification proposed by him is in the best interest of the child.
This court long ago held that where children have been with the domiciliary parent their entire lives, an interstate move with the children by the domiciliary parent does not alone establish by the appropriate standard that the move was detrimental to the welfare of the children or a change in circumstances sufficient to justify a modification of custody. Smith v. Smith, 615 So.2d 926, 935 (La.App. 1 Cir.), writ denied, 617 So.2d 916 (La.1993). We also note that it has been held that an intrastate move is not per se a material change of circumstances such that a court may presume that it will materially affect the children's welfare without further evidence. Hensgens, 94-1200 at 9, 653 So.2d at 53 (citing as authority, Smith, 615 So.2d 926 (La.App. 1 Cir.), writ denied, 617 So.2d 916 (La.1993)). In the present case, the parties agree that Lake Charles is an intrastate move within the 150-mile radius established by La. R.S. 9:355.3. Without further evidence, we cannot say that the projected move by Ms. Major is in itself a material change of circumstances that will materially affect the child's welfare.
Upon review of the evidence introduced in this proceeding, only five people testified: Ms. Major; Mr. Major; the paternal grandfather, Doug Major; the paternal grandmother, Charlotte Major; and the maternal grandmother, Rita Guidry. Both Mr. and Ms. Major testified that the other party was a good parent, although it was obvious from the testimony that Ms. Major *553 has been the dominant caretaker of the minor child. This was the case not only throughout their marriage, but during the divorce proceeding and thereafter. Ms. Major has always tended to the daily needs of the minor child. Conversely, the interaction of Mr. Major and his parents with his minor child has been basically limited to those weekends when Mr. Major has visitation.
The testimony of Ms. Major convinces us that said visitation will not change if Ms. Major is permitted to move with the minor child to Lake Charles. Moreover, the record is replete with testimony that Ms. Major has always allowed and encouraged visitation by Mr. Major and his family, and has never done anything to interfere with said visitation. While a move by Ms. Major to Lake Charles may mean that Mr. Major and his parents may not be able to see the minor child during the week, the record reflects that in the eight years since the parties' divorce, Mr. Major and his parents have seen the child very rarely during the week. Under the unique facts of this case, the inability of Mr. Major and his parents to see the child during the week does not constitute a material change.
In determining the best interest of the child, the trial court should have considered the twelve non-exclusive factors set forth under La. Civ.Code art. 134. After reviewing those factors, and taking into account the oral testimony presented at the hearing in this matter, it is the opinion of this court that only two of the twelve factors (namely, the fifth and eighth) favor Mr. Major, while the remaining factors either favor Ms. Major or equally favor both parties. The fifth factor set forth under Art. 134 concerns the permanency of the existing or proposed family home, while the eighth factor discusses the home, school, and community history of the child.
It is the opinion of this court that Mr. Major failed to meet his required burden of showing that a change of circumstances materially affecting the welfare of his minor child had taken place since the last stipulated judgment, and that the modification proposed by him was in the best interest of the child.

CONCLUSION
For the reasons set forth more fully above, the judgment of the trial court that precluded Ms. Major from moving with her daughter to an area within one hundred and fifty miles of her domicile at the time the custody decree was rendered is hereby reversed. All costs associated with this appeal shall be borne by plaintiff-appellee, Jason Scott Major.
REVERSED AND RENDERED.